UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ANITRA POLLARD**, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-01010 (ESH) |
| **DISTRICT OF COLUMBIA**, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Anitra Pollard (as guardian and conservator of Kevin Witherspoon) and Lakeisha Witherspoon (sister of Kevin Witherspoon) bring this 42 U.S.C. § 1983 action against defendants, the District of Columbia and eight District employees in both their official and individual capacities. Plaintiffs allege in 16 counts that defendants unlawfully injured Kevin Witherspoon, a mentally disabled man, by, among other things, using him as a police informant and wrongfully imprisoning him. Four of the individual defendants – Sherman Anderson, Hampton D. Durham, Christopher A. Hall, and Desiree Walker, all officers in the Metropolitan Police Department ("MPD") in the Narcotics and Special Investigations Division ("NSID") ("Moving Defendants") – have filed motions to quash proof of service.[1] For the reasons stated herein, the Court will grant the motions to quash and direct plaintiffs to perfect service.

---

[1] The remaining individual defendants are Cathy L. Lanier, MPD chief of police; Thomas N. Faust, director of the District's Department of Corrections; and two other MPD officers in the NSID, Kathleen Wiedefeld and Isaac Jackson. (*See* Compl. at 1-3.) These defendants do not contest service, and their answer to the complaint is due on August 13, 2012. (*See* Minute Order, July 16, 2012 (granting in part and denying in part motion for extension of time to answer filed by the District, Lanier, Faust, and Wiedefeld).)

**BACKGROUND**

Plaintiffs filed their complaint on June 20, 2012. On June 25, 2012, plaintiffs filed an affidavit of service for each Moving Defendant. (Anderson Aff. of Service (Dkt. No. 5); Durham Aff. of Service (Dkt. No. 6); Hall Aff. of Service (Dkt. No. 8); Walker Aff. of Service (Dkt. No. 11).) According to the affidavits, the process server, Devin Brian Howell, served defendants Anderson, Durham, and Hall on June 22, 2012, by giving a copy of the summons and complaint to Lieutenant Brian Murphy at the NSID headquarters (1215 Third Street N.E., Washington, D.C.), and he served defendant Walker on June 23, 2012, by giving a copy of the summons and complaint to Captain Lamar West at the MPD First District Substation (500 E Street S.E., Washington, D.C.). The affidavits state that Murphy and West were "designated and authorized by law to accept service of process on behalf of [the named defendant]." (*See, e.g.*, Anderson Aff. of Serv. at 1.) Each Moving Defendant has filed a motion to quash proof of service on the ground that the person who accepted service, either Murphy or West, was "not authorized . . . to receive service of process" on behalf of the Moving Defendant. (*See* Hall Mot. to Quash at 1 (Dkt. No. 14); Anderson Mot. to Quash at 1 (Dkt. No. 15)[2]; Durham Mot. to Quash at 1 (Dkt. No. 19); Walker Mot. to Quash at 1 (Dkt. No. 22).) Attached to each motion is an affidavit from the corresponding defendant stating that "I did not designate or authorize [the

---

[2] Defendant Anderson's motion is titled a "motion to dismiss," but the supporting memorandum and proposed order make clear that it is, in fact, a motion to quash proof of service. (*See* Anderson Mot. & Mem. & Proposed Order (Dkt. No. 15).) Defendant Walker's motion, titled a "motion to quash," asks the Court to both quash the proof of service and dismiss Walker from the case, but does not mention dismissal in the supporting memorandum or proposed order. (*See* Walker Mot. & Mem. (Dkt. No. 22).) Accordingly, the Court will treat all four motions as simply motions to quash proof of service. *Cf. Hammond v. Fed. Bureau of Prisons*, 740 F. Supp. 2d 105, 109 (D.D.C. 2010) ("insufficient service of process is typically a defect that can be cured").

person served] to accept service of process on my behalf." (Anderson Aff. ¶ 4; Hall. Aff. ¶ 4; Durham Aff. ¶ 4; Walker Aff. ¶ 4.[3])

Plaintiffs oppose the motions to quash, asserting that they had a "factual basis for believing" Murphy and West were "designated, or authorized, or approved, or appointed to accept service of process for defendant in this case by the surrounding circumstances." (Pls. Opp'n to Hall Mot. at 1 (Dkt. No. 20); Pls. Opp'n to Durham Mot. at 1 (Dkt. No. 21); Pls. Opp'n to Anderson Mot. at 1 (Dkt. No. 22); Pls. Opp'n to Walker Mot. at 1 (Dkt. No. 24).) To support this contention, plaintiffs submitted with their opposition affidavits from (1) Darlene Lucille Eubank Howell ("Darlene Aff."); (2) Roy Carleton Howell ("Roy Aff."), plaintiffs' counsel; and (3) Devin Brian Howell ("Devin Aff."), the process server.[4] Darlene Howell's affidavit describes a failed attempt to serve defendants Anderson, Durham and Hall on June 20, 2012, through Sergeant Skelton at the NSID.[5] (Darlene Aff. ¶ 19.) Roy Howell's affidavit states that he had a conversation on June 21, 2012, with Brenda Gilmore, MPD Assistant General Counsel, who told him that Lieutenant Murphy would "have the officers available for service of process or officially accept service of process on their behalf" on June 22, 2012. (Roy Aff. ¶ 9.) The affidavit further states that on June 22, 2012, acting on Gilmore's advice, Roy Howell and Devin

---

[3] The affidavit signed by defendant Walker and attached to her motion to quash is mistitled as "Affidavit of Hampton Durham." (*See* Walker Aff. (Dkt. No. 22-1).)

[4] The Court assumes that the three Howells are related to each other.

[5] According to Darlene Howell, on June 20, 2012, a telephone call was placed in her presence to the NSID headquarters regarding service of process on defendants Anderson, Durham and Hall. (Darlene Aff. ¶¶ 2–3.) The person making the call, who is not identified, purportedly "reached Sgt. Skelton and informed him of the law suit and discussed service of process on [d]efendant-detectives." (*Id.* ¶ 4.) Sgt. Skelton, in turn, "informed us that he was authorized to accept service of process for NSID [d]efendant-detectives and would make the officers available for service" (*id.* ¶ 6) and "instructed us to arrive at roll call that day when he would be present and other NSID officers also." (*Id.* ¶ 8.) Darlene Howell then went to the address she had been given, but when she arrived, Sgt. Skelton refused to meet with her. (*Id.* ¶¶ 9–19.)

Howell went to NSID headquarters, where Lieutenant Murphy officially accepted service on behalf of defendants Anderson, Durham and Hall, stating that he was authorized to do so. (Roy Aff. ¶¶ 2–15.) Finally, Devin Howell's affidavit states that, after learning from Lieutenant Murphy on June 22, 2012, that defendant Walker had transferred to MPD First District Substation, he went there on June 23, 2012, and gave the summons and complaint to "Commander Captain Lamar Walker [sic] . . . who stated he was authorized to accept service" on defendant Walker's behalf. (Devin Aff. ¶¶ 2–11.)[6]

## ANALYSIS

Plaintiffs contend that the Moving Defendants have been properly served pursuant to Rule 4(e)(2) because Lieutenant Murphy and Captain West were each "agent[s] authorized by appointment . . . to receive service of process," Fed. R. Civ. P. 4(e)(2), while the Moving Defendants have denied authorizing any other person to accept service on their behalf.[7]

---

[6] Devin Brian Howell's affidavit of service, affidavit, and plaintiffs' opposition refer to the police captain who accepted service for defendant Walker as "Lamar Walker." (*See* Walker Aff. of Serv.; Devin. Aff. ¶ 8–11, Pls. Opp'n to Walker Mot. at 3–4.) However, this is an error; the correct name of the captain is Lamar West. (*See* Walker Mot. to Quash at 1–4.)

[7] Rule 4(e)(2) provides that "an individual . . . may be served [a summons and complaint] in a judicial district of the United States by . . . delivering a copy of each to an agent authorized by appointment or by law to receive service of process." The "agent authorized . . . by law" language refers to authorization to receive process by legislative enactment. 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1098 (3d ed. 2002); *accord Nelson v. Swift*, 271 F.2d 504, 505 (D.C. Cir. 1959) (per curiam) ("The phrase 'by law' refers to statutory provisions for substituted service").

There are other methods of proper service, such as "delivering a copy of the summons and of the complaint to the individual personally," Fed. R. Civ. P. 4(e)(2)(A), or "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," Fed. R. Civ. P. 4(e)(2)(B). No Moving Defendant has been personally served (*see* Hall Aff. ¶ 5 ("I was not personally served with copies of the Summons and Complaint"); Anderson Aff. ¶ 2 ("I have not been personally served with the Summons and Complaint in the above-captioned case."); Durham Aff. ¶ 5 ("A copy of the summons and complaint in this matter was handed to me [by] Sgt. Avis King. When Sgt. King handed me the summons and complaint, she said that Lt. Murphy told me to give this to you."); Walker Aff. ¶ 5

"Without valid service of summons or a waiver of service, the Court cannot establish proper venue and personal jurisdiction over the defendants, and the case may not proceed." *Mann v. Castiel*, 729 F. Supp. 2d 191, 196 (D.D.C. 2010) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 94, 104 (1987)).[8]  "A signed return of service . . . constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 85–86 (D.D.C. 2009) (citing *O'Brien v. R.J. O'Brien Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)); *accord* 62B Am. Jur. 2d Process § 294.  However, once challenged, the plaintiff bears the burden of showing valid service by a preponderance of the evidence.  *Gates*, 646 F. Supp. 2d at 84 (citing *Koerner v. United States*, 246 F.R.D. 45, 47 (D.D.C. 2007)); *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) ("[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4").[9]

---

("I found a copy of the summons and complaint in this matter on my desk at the First District Police Precinct when I came to work on June 25, 2012.")), and there is no indication that plaintiffs attempted service by either of these methods.

[8] The Federal Rules' service provisions stem from the constitutional guarantee of due process of law, which requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[9] In cases such as this one, "where the defendant has received actual notice of the action, the provisions of Rule 4(e) should be liberally construed to effectuate service and uphold the jurisdiction of the court," since "[t]he rules governing service of process are not designed to create an obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction," but are instead "for the purpose of providing a likelihood of bringing actual notice to the intended recipient."  *Ali v. Mid-Atlantic Settlement Services, Inc.*, 233 F.R.D. 32, 35–36 (D.D.C. 2006) (internal citations and quotation marks omitted; collecting cases).  Still, proof of actual notice does not itself satisfy the rules, as "notice alone cannot cure an otherwise defective service."  *Mann*, 729 F. Supp. 2d at 191 (citing *Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 4 (D.D.C. 2004)).

To establish agency by appointment, "an actual appointment for the specific purpose of receiving process normally is expected." 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1097 (3d ed. 2002). "Claims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough to bind the defendant to the court's jurisdiction; there must be evidence that the defendant intended to confer that authority upon the agent in order to satisfy the terms of Rule 4(e)(2)." *Id.* "The rule is clear that it must appear that any agent who accepts service must be shown to have been authorized to bind his principal by the acceptance of process and, further, that the authority to accept such service cannot be shown by the extra-judicial statements of the [agent]." *Schwartz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955); a*ccord Brodie v. Worthington*, 2011 WL 4402783, at *1 (D.D.C. Sept. 21, 2011) ("even if the Court construed" letters from the alleged agent "as a claim of authority to receive service for him," plaintiff would still be required to "produce evidence that [defendant] actually intended to confer such authority"). For example, a clerk may not be authorized to receive service on another's behalf even though she "represented herself as such on the receipt," since "acceptance of service and . . . statements of authority are, in and of themselves insufficient to establish the required agency relationship." *First Amer. Bank, N.A. v. United Equity Corp.*, 89 F.R.D. 81, 84 (D.D.C. 1981).

Although actual appointment is required, evidence of "the requisite intent" of defendant to make that appointment may be "implied . . . from the circumstances surrounding the service upon the agent." Wright & Miller, *supra*, § 1097. "The federal courts look to the circumstances of the agency relationship, and although authority to accept process need not be explicit, it must either be express or implied from the type of relationship that has been established between the defendant and the alleged agent"; put differently, there must be a "factual basis for believing that

6

an appointment" to receive process had been made. *Id.*; *accord United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997) ("An agent's authority to accept service may be implied in fact," but the party seeking to demonstrate such authority must "present facts and circumstances showing the proper relationship between the defendant and its alleged agent"). Implied authorization is found only in the rare case. *See, e.g.*, *Thelen v. City of Elba*, 2009 WL 212940, at *5 (D. Minn. Jan. 28, 2009) (service on defendant's agent was impliedly authorized where the agent, defendants' attorney, "told [the plaintiffs] in no uncertain terms" that he represented defendants and had received a copy of the complaint, instructed the plaintiffs to "not contact those [d]efendants 'either by letter or in person,'" and directed plaintiffs "to convey 'all inquiries' to him or his office").

Two factually similar cases convince the Court that service was not proper in this case. In *Fenwick v. United States*, 691 F. Supp. 2d 108 (D.D.C. 2010), defendants challenged the validity of service of process where an employee of the general counsel's office of the U.S. Marshals Service accepted service in an office lobby on behalf of three deputy U.S. marshals sued in their individual capacity. The deputy marshals produced affidavits from the general counsel's employee stating that he told the process server over the phone and later in the lobby that he was not authorized to accept service on behalf of Marshals Service employees sued in their individual capacities, as well as affidavits from defendants stating that they had never authorized the general counsel's employee to accept service on their behalf. *Id.* at 112–13. The plaintiff, however, asserted that the employee had claimed to be authorized to accept service on the deputies' behalf. *Id.* at 113. The court found service ineffective, regardless of what the employee told plaintiff, as plaintiff failed to demonstrate "any intent on the part of the deputies to authorize [the employee] to receive service on their behalf." *Id.*

*Tindle v. Xenos*, 2010 WL 4739787 (E.D. Mich. Nov. 16, 2010) also involved similar facts. In *Tindle*, plaintiff sought to serve sixteen sheriff's deputies in a federal civil rights suit. *Id.* at *1. Plaintiff's process server contacted the sheriff's department counsel, who informed him that "'she would accept service for all of the defendants' in the case." *Id.* Later, defendants moved to quash service, asserting that they had never authorized sheriff's counsel to accept service on their behalf. *Id.* The court quashed the return of summons, finding that while plaintiff "appears to have relied in good faith" on the sheriff's counsel's "understanding and assertion of her own authority," there was insufficient evidence of express or implied authorization. *Id.* at *2.

The record here is similarly lacking in any evidence that defendants Anderson, Durham, Hall, and Walker actually or by implication authorized an agent to accept service on their behalf. Accordingly, the Court finds that none of these defendants have been properly served pursuant to Rule 4(e)(2).

## CONCLUSION

For the foregoing reasons, the Court will grant the motions of defendants Anderson, Durham, Hall, and Walker, and Anderson to quash proof of service.[10]  Accordingly, it is hereby

---

[10] As noted, plaintiffs do not appear to have attempted to personally serve any of the defendants. In addition, there is no indication that any defendant has intentionally evaded service, and substantial time remains in the 120-day window to serve the complaint and summons. Thus, there is no need at this time for the Court to issue an order to facilitate service of process. *Cf. Tindle*, 2010 WL 4739787, at *2-*3 (after sheriff's counsel informed plaintiff's process server that "she could not release home addresses of law enforcement personnel for service of process purposes due to safety concerns," and also did not give out work addresses, the court expressed concern that "the facts of this case amount to a diligent plaintiff getting the 'run-around' and that plaintiff "has been caught in a service-of-process 'catch 22' that prevents him from having his case decided on the merits, despite active efforts to serve the defendants"; the court extended the time to serve process under Rule 4(m), ordered that defendant's counsel file, under seal, the home addresses and work shift information of the defendants for the court to provide to plaintiff, "subject to an appropriate protective order," in order to "give [plaintiff] an opportunity to

**ORDERED** that defendant Hall's motion to quash proof of service (Dkt. No. 14) is **GRANTED**; it is further

**ORDERED** that defendant Anderson's motion to quash proof of service (Dkt. No. 15) is **GRANTED**; it is further

**ORDERED** that defendant Durham's motion to quash proof of service (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that defendant Walker's motion to quash proof of service (Dkt. No. 22) is **GRANTED**;

**SO ORDERED.**

                        /s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:   August 10, 2012

---

provide proper personal service" upon defendants).  However, if future good-faith efforts to serve are frustrated, this Court will not hesitate to issue an appropriate order.

The Court takes a dim view of the handling of service of process in this case.  As another court has stated:

> [T]he entire matter of service of process in this case reflects poorly on everyone concerned. Plaintiff . . . [ran] a considerable risk that the service would prove ineffective. Defendants, for their part, received actual notice of the complaint, and have sought dismissal for technical reasons only, having suffered no prejudice of any kind. While they are entitled to seek to enforce the rule – technical though they may be – . . . under the circumstances, the resources of the parties and the Court could surely have been put to better use.

*Som v. Daniel Law Office, P.C.*, 573 F. Supp. 2d 349, 355 (D. Mass. 2008).